RECORD NO. 15-2178

IN THE

# United States Court of Appeals

### FOR THE FOURTH CIRCUIT

**GARLOCK SEALING TECHNOLOGIES, LLC and
GARRISON LITIGATION MANAGEMENT GROUP, LTD**,

*Plaintiffs-Appellees,*

**v.**

**SIMON GREENSTONE PANATIER BARTLETT, APC;
JEFFREY B. SIMON; DAVID C. GREENSTONE; ESTATE
OF RONALD EDDINS; and JENNIFER L. BARTLETT,**

*Defendants-Appellants.*

## BRIEF OF APPELLEES

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA CHARLOTTE DIVISION

**D. Blaine Sanders
Robert E. Harrington
ROBINSON BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
704.377.2536**

**Counsel for Plaintiffs-Appellees Garlock Sealing Technologies, LLC and
Garrison Litigation Management Group, Ltd.**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................ ii

JURISDICTIONAL STATEMENT ....................................................... 1

ISSUE PRESENTED ........................................................................... 6

STATEMENT OF THE CASE ............................................................... 6

    I.    GARLOCK'S COMPLAINT ...................................................... 6

    II.   PROCEEDINGS BELOW ........................................................ 9

SUMMARY OF THE ARGUMENT .................................................... 10

ARGUMENT .................................................................................... 12

    I.    DEFENDANTS CANNOT USE STATE ANTI-SLAPP
        STATUTES TO SUPERSEDE GARLOCK'S FEDERAL
        CLAIMS AND SUPPLANT THE FEDERAL RULES OF
        CIVIL PROCEDURE ............................................................... 12

        A.    State Anti-SLAPP Statutes Cannot Apply to Garlock's
              Federal Claims Under RICO .................................... 13

        B.    State Anti-SLAPP Statutes Are Procedural Rules that Do
              Not Apply in Federal Court, Whether to Federal or State
              Law Claims ............................................................. 14

    II.   STATE LAW LITIGATION PRIVILEGES DO NOT
        ABSOLVE DEFENDANTS OF LIABILITY FOR THEIR
        FRAUDULENT CONDUCT ...................................................... 21

        A.    The Federal Common Law of Privilege—Not State
              Law—Applies to Garlock's Claims .......................... 22

        B.    The District Court Properly Declined to Decide Issues
              Concerning Choice of Law On the Face of the Pleadings .... 24

    III.  NO COMMON LAW PRINCIPLE GRANTS DEFENDANTS
        IMMUNITY FROM CLAIMS UNDER RICO .................................. 27

CONCLUSION ................................................................................. 35

## <u>TABLE OF AUTHORITIES</u>

## Cases

*3M Co. v. Boulter,* 842 F. Supp. 2d 85 (D.D.C. 2012) ............................................19

*Abbas v. Foreign Policy Grp, LLC*, 783 F.3d 1328 (D.C. Cir. 2015) ............. passim

*Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*, 640 F. Supp. 1411 (E.D.N.C. 1986) ........................................26

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) ........................................19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544  (2007)........................................17

*Boudreau v. Baugman*, 368 S.E.2d 849 (N.C. 1988)........................................25

*Briscoe v. LaHue*, 460 U.S. 325 (1983)........................................29

*Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F. Supp. 2d 1172 (C.D. Cal. 2006)........................................13

*Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, (1987) ........................................15

*Butz v. Economou*, 438 U.S. 478 (1978)........................................29

*Canady v. Crestar Mortgage*, 109 F.3d 969 (4th Cir. 1997)........................................3

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)........................................18

*Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014)........................................34

*Clatterbuck v. City of Charlottesville*, 708 F.3d 549 (4th Cir. 2013)........................................17

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)........................................5

*Crowe v. Smith*, 848 F. Supp. 1258 (W.D. La. 1994)........................................ 28, 34

*CSX Transp., Inc. v. Gilkison*, No. 5:05CV202, 2012 WL 1598081 (N.D. W. Va. May 3, 2012)........................................34

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F.Supp. 2d 153 (E.D.N.Y. 2010) ............................................................... 32, 33

*Deck v. Engineered Laminates*, 349 F.3d 1253 (10th Cir. 2003) ................... 32, 33

*Erie Ry. Co. v. Tompkins*, 304 U.S. 64 (1938)........................................15

*Forrester v. White*, 484 U.S. 219 (1988) ...................................................29

*Gay v. Wall,* 761 F.2d 175 (4th Cir. 1985) ...............................................18

*Hancock v. Dodson*, 958 F.2d 1367 (6th Cir. 1992).................................23

*Hanna v. Plumer*, 380 U.S. 460 (1965) ...................................................15

*Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 698 S.E.2d 719 (N.C. Ct. App. 2010).......................................................................................25

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010) ........................... 5, 13, 14

*HMK Corp. v. Walsey*, 828 F.2d 1071 (4th Cir. 1987)...........................32

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ...............................................29

*In re Garlock Sealing Technologies, LLC, et al.,* 504 B.R. 71 (Bankr. W.D.N.C. 2014) ...............................................................................8

*In re Merritt Dredging Co., Inc.*, 839 F.2d 203 (4th Cir. 1988)...........................25

*In re NCAA Student-Athlete Name & Likeness Litig.*, No. C 09-1967 CW, 2010 WL 5644656 (N.D. Cal. Dec. 17, 2010) ............................13

*Jackson v. Lightsey*, 775 F.3d 170 (4th Cir. 2014) .....................................2

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556 (6th Cir. 2013)....................................................................................... 32, 33

*Johnson v. JP Morgan Chase Bank DBA Chase Manhattan*, 536 F. Supp. 2d 1207 (E.D. Cal. 2008) ...................................................................32

*Kalina v. Fletcher*, 522 U.S. 118 (1997) ...................................................... 29, 30

*Kimes v. Stone*, 84 F.3d 1121 (9th Cir. 1996) ..........................................31

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ...................25

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005) .......................................................... 28, 34

*Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 387 F. Supp. 2d 521 (M.D.N.C. 2005) ...................................................................27

*Makaeff v. Trump Univ., LLC*, 715 F.3d. 254 (9th Cir. 2013) ......................... 18, 20

*Malley v. Briggs*, 475 U.S. 335 (1986) ...................................................29

*Martinez v. California*, 444 U.S. 277 (1980) ..........................................31

*McLaurin v. Fischer*, 768 F.2d 98 (6th Cir. 1985) ...................................3, 4

*Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058 (7th Cir. 1981) ......................................................................................23

*Modesty v. Shockley*, 434 F. App'x 469 (6th Cir. 2011) ............................3

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 130 (2009) ...................5

*N.Y. Cooling Towers, Inc. v. Goidel*, 805 N.Y.S.2d 779 (N.Y. Gen. Term. 2005) .......................................................................... 24, 25

*N.Y.C. Transit Auth. v. Morris J. Eisen, P.C.*, 276 A.D.2d 78 (N.Y. App. Div. 2000) ...............................................................................24

*NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742 (5th Cir. 2014) ............19

*Pearson v. Miller*, 211 F.3d 57 (3d Cir. 2000) .......................................23

*Pierson v. Ray*, 386 U.S. 547 (1967) .....................................................29

*Raney v. Allstate Ins. Co.*, 370 F.3d 1086 (11th Cir. 2004) ............................ 32, 33

*Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364 (9th Cir. 1992) ................. 23, 28

*Robinson v. Volkswagenwerk AG*, 940 F.2d 1369 (10th Cir. 1991) ................. 30, 31

*Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007)................................30

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393
    (2010) ................................................................................................ 4, 12, 15

*Smith v. Barry*, 502 U.S. 244 (1992) ................................................................3

*Smith v. Barry*, 985 F.2d 180 (4th Cir. 1993) ........................................3, 4

*Soukup v. Law Offices of Herbert Hafif*, 139 P.3d 30 (Cal. 2006) ..........................16

*Virmani v. Novant Health Inc.*, 259 F.3d 284 (4th Cir. 2001)................................22

*von Bulow v. von Bulow*, 811 F.2d 136 (2d Cir. 1987)...........................................23

**Statutes**

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961,
    *et seq.*................................................................................................................1

42 U.S.C. § 1983 ...............................................................................................29

Cal. Civ. Proc. Code § 425.16(b)(1) .............................................................5, 16

Cal. Civ. Proc. Code § 425.16 ......................................................................9, 17

N.Y. Judiciary Law § 487 ................................................................................25

Texas Civ. Prac. & Rem. Code § 27.001, *et. seq.*............................................9

Texas Civ. Prac. & Rem. Code Ann. § 27.003(a) and (b) .......................................16

Texas Civ. Prac. & Rem. Code § 27.005(c) .......................................................6, 17

Texas Civ. Prac. & Rem.  Code § 27.006...............................................................17

**Other Authorities**

Restatement (Second) of Conflict of Laws § 148 cmt. c. (1971) ...........................26

Wright & Miller, § 5434 State Law Proviso—"Element of Claim", 23
    Fed. Prac. & Proc. Evid. § 5434 (1st ed.) ..........................................................23

**Rules**

Federal Rule of App. P. 3(c) ....................................................................2

Fed. R. Civ. P. 56(a)..............................................................................18

Fed. R. Evid. 501 ...................................................................................22

8083003v5

## JURISDICTIONAL STATEMENT

Defendants, Simon Greenstone Panatier Bartlett, APC and several of its individual lawyers,[1] have filed an improper interlocutory appeal from District Court Judge Graham C. Mullen's September 2, 2015 order denying their Motion to Strike and, Alternatively, to Dismiss (the "Order").

The Order is not a final decision, and therefore is not subject to review under 28 U.S.C. § 1291.  Moreover, because Defendants' appeal rests on state procedural rules, known as "anti-SLAPP" statutes,[2] that conflict with the Federal Rules of Civil Procedure and do not supersede the federal RICO[3] claims at issue, it cannot satisfy the requirements of the collateral order doctrine.  Accordingly, Plaintiffs, Garlock Sealing Technologies, LLC ("GST") and Garrison Litigation Management Group, Ltd. ("GLMG" and, collectively with GST, "Garlock"), have moved to dismiss for lack of jurisdiction and here incorporate the arguments submitted in

---

[1]    Jeffrey B. Simon, David C. Greenstone, Estate of Ronald C. Eddins, and Jennifer L. Bartlett.

[2]    Defendants have appealed from the portion of the district court's order denying their motion to dismiss under the "anti-SLAPP" statutes of California and Texas. J.A. 206. "SLAPP" stands for "strategic lawsuits against public participation." Defendants contend that the denial of a motion to dismiss entitles them to an immediate appeal under the collateral order doctrine. *See* Defs-Appellants' Resp. to Mot. to Dismiss, (Doc. 16) at 6.

[3]    Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*

support of that motion. *See* Pls-Appellees' Mot. to Dismiss (Doc. 14) and Pls-Appellees' Reply Supp. Mot. to Dismiss Appeal (Doc. 18).

Faced with these jurisdictional defects, Defendants repeatedly attempt to expand this Court's review beyond the limited portion of the district court's order they designated for appeal. At the outset of their brief, Defendants claim they appealed "based on the absolute immunity available to attorneys for conduct occurring during the course of litigation" in the form of various state litigation privileges. Opening Brief of Appellants ("Brief") at 1. That is not the case. Defendants expressly limited their Notice of Appeal to the denial of their state law anti-SLAPP motion:

> Defendants appeal ***the portion of*** the Order denying Simon Greenstone's Motion to Strike and, Alternatively, to Dismiss Pursuant to Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim ("Motion to Strike") (Rec. Doc. 57) ***pursuant to the California and Texas anti-SLAPP statutes.***

J.A. 206 (emphasis added).

Defendants' decision to appeal only the denial of their anti-SLAPP motion binds them. Federal Rule of Appellate Procedure 3(c) requires that a notice of appeal "designate the judgment, order, *or part thereof* being appealed." (emphasis added). This requirement is jurisdictional. *See Jackson v. Lightsey*, 775 F.3d 170, 175 (4th Cir. 2014) ("Because 'Rule 3's dictates are jurisdictional in nature, their satisfaction is a prerequisite to appellate review.'" (quoting *Smith v. Barry*, 502

U.S. 244, 248 (1992)); *see also Modesty v. Shockley*, 434 F. App'x 469, 471-72 (6th Cir. 2011)). Accordingly, when an appellant "chooses to designate specific determinations in his notice of appeal—rather than simply appealing from the entire judgment—only the specified issues may be raised on appeal." *McLaurin v. Fischer*, 768 F.2d 98, 102 (6th Cir. 1985); *see also, e.g., Smith v. Barry*, 985 F.2d 180, 182 (4th Cir. 1993) (where "all issues triable by Jury" were designated for appeal, court could not hear appeal as to issues not triable by jury).

On December 2, 2015, Defendants, without leave, filed a surreply to Garlock's motion to dismiss their appeal, arguing that the scope of the Court's review should "not be defined by technical application of the notice of appeal." (Doc. 21 at 2). That argument concedes that Defendants designated only the denial of their anti-SLAPP motion, and not any other issue. It also misapplies the law. While there may be leniency when dealing with *defects* in designating issues for appeal, *Canady v. Crestar Mortgage*, 109 F.3d 969, 974 (4th Cir. 1997), that leniency applies only "as long as 'the intent to appeal a specific judgment can *be fairly inferred*.'" *Id.* (emphasis added) (citation omitted). Defendants, however, expressly limited their appeal to only "the portion of the Order" denying their motion to dismiss "pursuant to the California and Texas anti-SLAPP statutes." J.A. 206. This language—which is unambiguous—leaves no room to "fairly infer" that Defendants intended to appeal other issues.

8083003v5

3

Defendants are thus limited to arguing only the specific issue they designated in their Notice of Appeal—denial of their motion to dismiss pursuant to the California and Texas anti-SLAPP statutes. *See McLaurin*, 768 F.2d at 102; *Smith*, 985 F.2d at 182. The Court should ignore, on jurisdictional grounds, Defendants' attempt to confuse the issues by introducing questions they did not notice and preserve for appeal. *See* Pls-Appellees' Reply Supp. Mot. to Dismiss Appeal (Doc. 18), at 2-3.[4]

The Court also should dismiss Defendants' appeal for lack of jurisdiction for the reasons Garlock set out in its motion to dismiss. *See* Pls-Appellees' Mot. to Dismiss (Doc. 14), at 6-15. The California and Texas anti-SLAPP statutes upon which Defendants appealed are inapplicable in federal court Those statutes establish procedural rules that require trial courts to decide disputed issues of fact prior to discovery and thus directly conflict with the Federal Rules of Civil Procedure. They therefore have no place in federal proceedings, as the most recent circuit to consider the issue has held. *See Abbas v. Foreign Policy Grp, LLC*, 783 F.3d 1328, 1334-38 (D.C. Cir. 2015) (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 398–99 (2010)). Moreover, even those circuits that have permitted defendants to bring anti-SLAPP motions against state law

---

[4]    Even if Defendants had appealed the immunities issue properly, their argument would fail for the reasons discussed *infra* at pp. 21-35.

claims in diversity cases have held that they cannot be used to challenge federal claims, such as Garlock's RICO causes of action. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010). Accordingly, the California and Texas anti-SLAPP statutes cannot support an immediate appeal under the collateral order doctrine.

An equally fundamental defect is that the district court's order does not meet the traditional requirements for collateral order jurisdiction. *See* Pls-Appellees' Mot. to Dismiss (Doc. 14), at 16-18. To qualify for collateral review, an order must (i) conclusively determine (ii) an issue completely separate from the merits of the action (iii) in a manner that is effectively unreviewable on an appeal from a final judgment. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 130 (2009) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

The district court's order, however, neither involves an issue completely separate from the merits nor is it conclusive. A court cannot decide a motion under the California or Texas anti-SLAPP statutes—which require it to assess "the probability that a plaintiff will prevail" or whether there is "clear and specific evidence" for each element of a plaintiff's claim—without reviewing the underlying merits of the case. *See* Cal. Civ. Proc. Code § 425.16(b)(1) (providing that a court must dismiss a plaintiff's case "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on

the claim"); Texas Civ. Prac. & Rem. Code § 27.005(c) (requiring dismissal unless the plaintiff "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question."). Indeed, the district court stressed that its order was ***not*** conclusive and expressly allowed the Defendants to bring their motion again at summary judgment, when the court can assess evidence outside the pleadings and determine issues that require further factual development, such as choice of laws. J.A. 202-03; Pls-Appellees' Mot. to Dismiss (Doc. 14), at 18-20.

Defendants' appeal lacks jurisdiction for each of these reasons and should be dismissed as an attempt to circumvent the final judgment rule.

## ISSUE PRESENTED

1.    Whether the district court properly denied Defendants' motion to dismiss under the California and Texas "anti-SLAPP" statutes, which establish state procedural rules that conflict with the Federal Rules of Civil Procedure and cannot supersede Garlock's federal RICO claims.

## STATEMENT OF THE CASE

## I.    GARLOCK'S COMPLAINT

Garlock, which formerly manufactured asbestos gaskets and packing used in industrial applications, filed this action on January 9, 2014, asserting claims for fraud, civil conspiracy, and violations of RICO against Defendants for a years-long

scheme to defraud Garlock into paying exorbitant settlements for asbestos-related personal injury claims.

Contrary to Defendants' rendition, the Complaint does not "generally" allege the nature of Defendants' fraudulent scheme, nor does it assert mere complaints about Defendants' "litigation tactics." Brief at 6-7. Instead, in more than fifty pages of factual allegations, the Complaint meticulously outlines the who, what, where, when, and why of Defendant's fraudulent scheme and attaches extensive documents, many of which contain the very statements Defendants made in the course of defrauding Garlock. Indeed, the principal holding of the district court's Order is that Garlock properly pled its claims, and Defendants did not—and as even they must concede, cannot—appeal the portions of the Order denying their motion to dismiss for failure to state a claim. J.A. 196-201 and 203-206.

As detailed in the Complaint, Defendants perpetrated this scheme by concealing evidence that their clients had been exposed to dangerous asbestos-containing products—for which bankruptcy trusts are now responsible—in order to obtain inflated settlements in their suits against Garlock. J.A. 14-15. Defendants and their co-counsel then obtained payments from these bankruptcy trusts based on the same product exposures they hid from Garlock. J.A. 15.

Garlock discovered evidence of Defendants' scheme in the course of its pending Chapter 11 case in the Bankruptcy Court for the Western District of North

Carolina. J.A. 35, 43, 50. Bankruptcy Judge George R. Hodges entered an order on January 10, 2014 estimating Garlock's aggregate liability for present and future mesothelioma claims against Garlock. *In re Garlock Sealing Technologies, LLC, et al.,* 504 B.R. 71, 86 (Bankr. W.D.N.C. 2014). After allowing discovery into fifteen settled cases, Judge Hodges determined that, in each one of those actions, counsel for the claimant withheld evidence of their clients' exposures to asbestos-containing products manufactured by entities that had filed for bankruptcy protection and therefore were not subject to tort suits. *Id.*

Accordingly, although Judge Hodges found it unnecessary to determine the "propriety" of the plaintiffs' lawyers' practices, *id.* at 87, he concluded that Garlock's tort settlements were not a reliable predictor of its liability for present and future mesothelioma claims because they were infected by these misrepresentations—a pattern that played out in each of the cases the Bankruptcy Court analyzed:

> [T]he fact that each and every one of them contains such demonstrable misrepresentation is surprising and persuasive. More important is the fact that the pattern exposed in those cases appears to have been sufficiently widespread to have a significant impact on Garlock's settlement practices and results.

*Id.* at 85. Judge Hodges described the plaintiffs' lawyers' conduct as a "startling pattern of misrepresentation." *Id.* at 86.

Garlock's Complaint details Defendants' efforts to fraudulently conceal evidence in three cases that Judge Hodges analyzed—filed in Texas and California—and another ten—filed in California and Florida—into which Judge Hodges allowed limited discovery. J.A. 18-19. Indeed, Defendants' misconduct affected settlement negotiations in all of their cases against Garlock, and they continue to perpetrate their fraudulent scheme to this day. J.A. 32-33.

## II.   **PROCEEDINGS BELOW**

Defendants responded to the Complaint by filing a Motion to Strike and, Alternatively, to Dismiss, seeking dismissal under Fed. R. Civ. P. 12(b)(6) and the anti-SLAPP statutes of California and Texas, among other arguments. J.A. 192-193. The anti-SLAPP statutes are state procedural rules that allow defendants to bring special "motions to strike" in lawsuits that arise out of certain petitioning activity, which require plaintiffs to make an evidentiary showing prior to discovery. *See* Cal. Civ. Proc. Code § 425.16; Texas Civ. Prac. & Rem. Code § 27.001, *et. seq.*

The district court entered an order denying both the Rule 12(b)(6) and anti-SLAPP components of Defendants' motion to dismiss on September 2, 2015. J.A. 196-205. The court concluded that Garlock properly pled its claims under RICO and that its allegations were "more than adequate" to state claims for fraud and civil conspiracy. J.A. 204. With respect to Defendants' anti-SLAPP motion, the

8083003v5

9

Court held it could not determine whether the laws of New York (where Garlock suffered injury and was based during all times relevant this action), California, or Texas, apply to Garlock's state law claims without further factual development. J.A. 202-203. Though the Court posited that Defendants' motions under Rule 12(b)(6) and anti-SLAPP statutes should be treated under the same standard, it expressly declined to make a ruling. Instead it merely denied the anti-SLAPP motion as "premature" and allowed Defendants to reassert it at summary judgment. *Id.*

Defendants filed a notice of appeal on October 2, 2015, specifying that they were appealing "the portion of the Order denying" their motion to dismiss "pursuant to the California and Texas anti-SLAPP statutes." J.A. 206.

## SUMMARY OF THE ARGUMENT

The district court properly denied Defendants' motion to dismiss, concluding that Garlock's complaint was "more than adequate" to establish its claims against Defendants for violations of RICO, fraud and civil conspiracy. Defendants do not challenge this determination, and for good reason. Orders denying motions to dismiss are not subject to immediate interlocutory appeal.

Instead, Defendants insist that state law shields them from liability for racketeering and fraud, no matter how conniving the scheme they develop. Defendants' various attempts to get a pass, however, lack merit.

8083003v5

First, Defendants' assert that they may use state "anti-SLAPP" procedures to require Garlock to present further evidence supporting its claims—as if the extensive documentation attached to its complaint were insufficient—prior to discovery. These state statutes, however, cannot supersede Garlock's federal RICO claims. Moreover, as procedural rules that create a regime at odds with the Federal Rules of Civil Procedure, anti-SLAPP statutes are inapplicable (to any of Garlock's claims) in federal court.

Second, even if Defendants had preserved for appeal application of the state law litigation immunities they seek to invoke, they could not establish that those litigation immunities apply to Garlock's claims. As a baseline matter, because Garlock has brought both federal and state claims in federal court, federal law—not state law—governs Defendants' claims of privilege. Moreover, to the extent state law does apply, the district court rightly determined that it could not decide issues concerning choice of laws, which are fact intensive, without further factual development. Contrary to Defendants' contention, the choice of law matters, as New York's litigation immunity does not shield lawyers from liability for fraud committed in the course of litigation.

Finally, despite Defendants' selective citation to otherwise inapposite cases, fraudulent conduct in the course of litigation can, and does, give rise to claims under RICO.

8083003v5

For each of these reasons, as described in greater detail below, this Court should affirm the Order denying Defendants' motion to dismiss.

## ARGUMENT

## I. DEFENDANTS CANNOT USE STATE ANTI-SLAPP STATUTES TO SUPERSEDE GARLOCK'S FEDERAL CLAIMS AND SUPPLANT THE FEDERAL RULES OF CIVIL PROCEDURE.

Defendants pay little attention to the sole issue designated in their notice of appeal—whether the district court properly denied their motion to strike under the California and Texas anti-SLAPP statutes. Their relegation of this issue to last place is telling. Defendants evidently hope to minimize discussing that, only this summer, the D.C. Circuit held anti-SLAPP statutes have no place in federal proceedings because they establish procedural rather than substantive rules that conflict with the Federal Rules of Civil Procedure. *See Abbas v. Foreign Policy Grp, LLC*, 783 F.3d 1328, 1334-38 (D.C. Cir. 2015) (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99 (2010)).

Defendants' arguments highlight the very concerns that led to the court's decision in *Abbas*. The district court found that Garlock's allegations were "more than adequate" to state claims for fraud and violations of RICO and therefore should survive a motion to dismiss. J.A. 203-205. Defendants nevertheless insist that the district court erred—not because it applied the wrong standard under Rule

12(b)(6)—but because it did not also require Garlock to make an evidentiary showing under the California and Texas anti-SLAPP statutes. Brief at 32.

As *Abbas* makes clear, Defendants cannot use state law procedures to avoid claims properly pled under the Federal Rules. This is true no matter which state's laws apply to Garlock's common law fraud and civil conspiracy claims. First, as even those circuits that have adopted Defendants' position recognize, state anti-SLAPP statutes have no application to federal claims, such as those under RICO. Second, as state procedural rules, anti-SLAPP statutes have no application in federal court whatsoever, even with respect to state law claims in diversity cases.

## A. State Anti-SLAPP Statutes Cannot Apply to Garlock's Federal Claims Under RICO.

Defendants' state anti-SLAPP argument simply cannot apply to Garlock's federal RICO claims. Courts universally hold that state anti-SLAPP statutes cannot apply to federal causes of action. *See Hilton v. Hallmark Cards,* 599 F.3d 894, 901 (9th Cir. 2010) (citing *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006) (holding state anti-SLAPP statutes cannot apply to federal claims, including RICO claims)); *see also In re NCAA Student-Athlete Name & Likeness Litig.*, No. C 09-1967 CW, 2010 WL 5644656, at *6 (N.D. Cal. Dec. 17, 2010) (observing that state anti-SLAPP statutes cannot support an immediate appeal from an order denying a motion to dismiss federal claims). Even those courts that have allowed litigants to bring anti-SLAPP

motions in federal court have done so *only with respect to state law claims in diversity cases* and properly have recognized that state anti-SLAPP statutes do not apply to federal claims. *Hilton*, 599 F.3d at 901.

Defendants persistently fail to recognize this distinction. Instead, they insist that they can use the California and Texas anti-SLAPP statutes to challenge Garlock's federal RICO claims as well as its state law claims, notwithstanding courts' unanimous rejection of their position. Yet, even if anti-SLAPP statutes were available to challenge Garlock's state law claims—which they are not—they could not apply to Garlock's federal RICO claims. Thus, independent of any other contention, the district court's order denying Defendants' motion to dismiss must be upheld with respect to Garlock's claims under RICO.

**B.    State Anti-SLAPP Statutes Are Procedural Rules that Do Not Apply in Federal Court, Whether to Federal or State Law Claims.**

While they cannot apply to Garlock's federal RICO claims under any theory, the California and Texas anti-SLAPP statutes do not apply to Garlock's state law claims either. Because state anti-SLAPP statutes establish procedural rather than substantive rules that directly conflict with the Federal Rules, they do not apply in any federal cases, including cases where courts exercise jurisdiction over state law claims.

Federal law governs procedure in federal courts. When federal courts exercise jurisdiction over state law claims, they "are to apply state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (citing *Erie Ry. Co. v. Tompkins*, 304 U.S. 64 (1938)).

Accordingly, "[w]hen a situation is covered by one of the Federal Rules," the federal rule applies, notwithstanding the existence of a conflicting state statute. *Id*. at 471; *see also Shady Grove*, 559 U.S. at 398-99 (majority opinion) (holding state law prohibiting class actions in certain cases conflicts with Fed. R. Civ. P. 23, and thus is inapplicable in federal cases). The Supreme Court has instructed federal courts not to apply a state law rule if it "answers the same question" as a validly-enacted federal rule. *See Shady Grove*, 559 U.S. at 398-99; *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987) (holding state rule requiring penalties to be assessed for frivolous appeals in certain cases did not apply because it was preempted by Fed. R. App. P. 38); *Hanna*, 380 U.S. at 463-44 (holding that Fed. R. Civ. P. 4, not corresponding state rule, governed manner for service of process).

As the D.C. Circuit recognized in *Abbas*, state anti-SLAPP statutes answer the same question as Federal Rules of Civil Procedure 12 and 56—"the circumstances under which a court must dismiss a plaintiff's claim before trial." *See* 783 F.3d. at 1333. In fact, California's and Texas' anti-SLAPP statutes both amend their states' *codes of civil procedure* to authorize defendants in certain

actions to bring special motions to dismiss within sixty days of being served. *See* Cal. Civ. Proc. Code. §§ 425.16(b) (authorizing a defendant to bring "a special motion to strike" in response to certain claims) and (f) (providing that "[t]he special motion shall be filed within 60 days of service of the complaint" or a longer time if extended by the court); Texas Civ. Prac. & Rem. Code Ann. § 27.003(a) and (b) (authorizing parties to bring "a motion to dismiss" certain claims within 60 days of service).

Defendants repeatedly betray the procedural nature of the anti-SLAPP statutes in in their brief. Defendants assert that anti-SLAPP statutes create "procedural and substantive defenses," though the only statutory provisions they can cite establish procedures for bringing special motions to dismiss. Brief at 27-28. Likewise, Defendants' own cases describe the California statute as creating a mechanism to "evaluate[] the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation." Brief at 32 (citing *Soukup v. Law Offices of Herbert Hafif*, 139 P.3d 30, 42 (Cal. 2006)).

Moreover, the California and Texas anti-SLAPP statutes do not just "answer the same question" as Rules 12 and 56, they "answer that question differently," by authorizing judges to dismiss cases they deem unlikely to succeed. *Abbas*, 783 F.3d at 1334.

Under the California statute, once a defendant files an anti-SLAPP motion,

the court must dismiss the action unless it finds there is "a probability that the plaintiff will prevail on the claim." *See* Cal. Civ. Proc. Code § 425.16(b)(1). The statute also requires the court to consider extrinsic evidence in the form of affidavits. *See id.* The Texas statute likewise requires a court to dismiss an action, provided it is based on certain conduct, unless the plaintiff "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code § 27.005(c). It, too, requires the court to look beyond the pleadings to affidavits in doing so. *Id.* § 27.006. Both statutes include provisions staying discovery once an anti-SLAPP motion is filed. *See* Cal. Civ. Code. § 425.16(g); Tex. Civ. Prac. & Rem. Code § 27.0006(b).

The Federal Rules, by contrast, do not impose a likelihood of success standard, nor do they authorize judges to weigh a plaintiff's evidence and decide disputed factual issues before trial. Under Rule 12(b)(6), a plaintiff is entitled to proceed so long as it has alleged sufficient facts to state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 558 (4th Cir. 2013) ("The Court's task is to test the legal feasibility of the complaint without weighing the evidence that might be offered to support or contradict it."). Moreover, in deciding a Rule 12(b)(6) motion, the court *must not* consider matters outside the pleadings. *See Dolgaleva v. Va. Beach City Pub. Sch.*, 364 F. App'x 820, 825 (4th Cir. 2010)

(overturning district court's dismissal because it relied on defense counsel's statements disputing plaintiff's allegations). State anti-SLAPP statutes direct courts to do the opposite.

The anti-SLAPP statutes likewise conflict with Rule 56. Under Rule 56, a party is entitled to summary judgment *only* if it can show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The rule, however, does not authorize courts to decide disputed factual issues, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), nor does it permit them to dismiss cases before allowing a reasonable opportunity for discovery. *See Gay v. Wall,* 761 F.2d 175, 178 (4th Cir. 1985) ("Because [the plaintiff] was not afforded an opportunity for reasonable discovery, the district court's treatment of the motion to dismiss as a motion for summary judgment was an abuse of discretion."). Again, state anti-SLAPP statutes direct courts to do the opposite.

The California and Texas anti-SLAPP statutes thus create a *procedure* fundamentally at odds with the Federal Rules. The procedural nature of these statutes alone should render them inapplicable in federal court, whether or not they conflict with the Federal Rules. *See Makaeff v. Trump Univ., LLC*, 715 F.3d. 254, 274 (9th Cir. 2013) (Kozinski, J., concurring) ("[T]he question of conflict only arises if the state rule is substantive; state procedural rules have no application in

8083003v5

federal court, no matter how little they interfere with the Federal Rules.") However, the differences between state anti-SLAPP statutes and the Federal Rules render them unworkable in federal courts. As the D.C. Circuit explained in *Abbas*:

> Th[e] difference matters. Under the Federal Rules, a plaintiff is generally entitled to trial if he or she meets the Rules 12 or 56 standards to overcome a motion to dismiss or for summary judgment. But the D.C. Anti-SLAPP Act nullifies that entitlement in certain cases. Under the D.C. Anti-SLAPP the plaintiff is not able to get to trial just by meeting those Rules 12 and 56 standards. The D.C. Anti-SLAPP Act, in other words conflicts with the Federal Rules by setting up an additional hurdle a plaintiff must jump over to get to trial.

783 F.3d at 1334.[5]

Despite *Abbas*' logical holding and its faithful adherence to the Supreme Court's decision in *Shady Grove*, Defendants urge the Court to adopt decisions from other circuits holding that anti-SLAPP statutes are somehow "substantive" and thus applicable in diversity cases. *See Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003); *NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 747 (5th Cir. 2014). Those lines of cases have been roundly criticized even by judges within the circuits where they were decided. *See Makaeff*, 736 F.3d at 1188 (Watford, C. J., dissenting from denial of rehearing *en banc*) ("California's anti-SLAPP statute

---

[5]     *See also 3M Co. v. Boulter,* 842 F. Supp. 2d 85, 102 (D.D.C. 2012), *appeal dismissed*, 12-7012, 2012 WL 5897085 (D.C. Cir. Oct. 19, 2012), *and motion for relief from judgment denied*, 290 F.R.D. 5 (D.D.C. 2013).

impermissibly supplements the Federal Rules' criteria for pre-trial dismissal of an action."); *Makaeff*, 715 F.3d at 275 (Kozinski, J., concurring) ("Federal courts have no business applying exotic state procedural rules which, of necessity, disrupt the comprehensive scheme embodied in the Federal Rules.").  As one Ninth Circuit judge observed, applying anti-SLAPP statutes in federal court "cuts an ugly gash" through the otherwise "integrated program of pre-trial, trial, and post-trial procedures" established by the Federal Rules of Civil Procedure.  *Id.* (explaining that the decision to allow anti-SLAPP motions in federal court "was a big mistake" and that "two other circuits have foolishly followed it").

In *Abbas*, D.C. Circuit rightly heeded these warnings and rejected the use of state anti-SLAPP procedures in federal courts.  *See* 783 F.3d at 1336 ("[W]e agree with Judge Kozinski and Judge Watford that [the decisions of other circuits applying state anti-SLAPP statutes] are not persuasive.").  This Court should do the same.  Rather than allowing legally sufficient claims to proceed through discovery (and then to trial to the extent there are genuine issues of material fact), as the Federal Rules require, anti-SLAPP statutes permit defendants to challenge a plaintiff's case at the motion to dismiss stage based on likelihood of success, before discovery.  Such a procedure would permit defendants to seek dismissal of a complaint while withholding evidence that might prove the plaintiffs' allegations.

Indeed, that is exactly what Appellants have sought to do here. The Federal Rules require otherwise.[6]

The Order denying Defendants' motion to dismiss under the California and Texas anti-SLAPP statutes thus should be affirmed.

## II.    STATE LAW LITIGATION PRIVILEGES DO NOT ABSOLVE DEFENDANTS OF LIABILITY FOR THEIR FRAUDULENT CONDUCT.

Apparently recognizing the defects in their anti-SLAPP arguments, Defendants spend the majority of their brief arguing that various state law litigation immunities allow them to avoid liability for fraud and racketeering activities so long as they commit them in the course of litigation. Defendants, however, did not appeal the portion of the Order denying their claims to state law litigation immunity. Their appeal on this issue should be denied for that reason alone. *See* Jurisdictional Statement *supra*. Still, their arguments fail as a matter of substance as well.

---

[6]    Even if Defendants were correct in their assertion that state anti-SLAPP statutes create substantive rather than procedural rights, their argument that the district court should have applied the California and Texas anti-SLAPP statutes in this case still fails. As set forth below, Garlock contends that the law of New York—the state in which Garlock is based, from which it disbursed each of the fraudulently-obtained settlement payments, and thus the only state with a connection to all of the conduct at issue—governs its fraud and civil conspiracy claims. *See* Section II(B), *infra* at pp. 24-27. New York, unlike California and Texas, has not enacted an anti-SLAPP statute, and thus, to the extent New York law applies, Defendants' anti-SLAPP arguments do not.

First, because Garlock has asserted both federal and state claims in federal court, federal law governs Defendants' claims of privilege.  Second, even assuming state law governs the privileges applicable to Defendants' conduct, the district court properly held that it could not decide the underlying choice of law questions without further factual development.

## A.    The Federal Common Law of Privilege—Not State Law—Applies to Garlock's Claims.

By asserting various state law litigation privileges as a defense to Garlock's state law claims, Defendants beg a question:  which court system's law applies. Defendants assume state law applies, but the Fourth Circuit has held that Federal Rule of Evidence 501 controls when a privilege is asserted in federal court. *Virmani v. Novant Health Inc.*, 259 F.3d 284, 286 (4th Cir. 2001) ("Federal Rule of Evidence 501 … governs privileges in federal court[.]").

Rule 501 provides as follows:

> The common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege unless any of the following provides otherwise:
> - the United States Constitution;
> - a federal statute; or
> - rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501.  The final sentence of this rule, commonly called the "state law proviso," raised the issue of which law should apply in cases like this one that

8083003v5

22

involve both federal and state claims. *See* Wright & Miller, § 5434 State Law Proviso—"Element of Claim", 23 Fed. Prac. & Proc. Evid. § 5434 (1st ed.). This Court settled the question in *Virmani*, holding that, "in a case involving both federal and state law claims, the federal law of privilege applies." *Id.* (*citing Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000); *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992); *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987); *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 & n. 3 (7th Cir. 1981) (per curiam)).

Defendants never even mention Rule 501. This omission is especially striking, given that the Ninth Circuit—where Defendants filed the majority of their cases against Garlock—has applied Rule 501 in the context of the same "litigation privileges" the Defendants assert:

> Defendant … also argues the suit is barred by a California litigation privilege. *See* California Civil Code § 47(2). However, the federal courts will recognize state privileges only in cases in which "[s]tate law supplies the rule of decision." Fed. R. Evid. 501. In federal question cases, the law of privilege is governed by "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." *Id.* [Defendant] cites no cases, and we have found none, indicating such a privilege has been recognized as a matter of federal common law.

*Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th Cir. 1992).

Because Rule 501 and *Virmani* require the application of the federal common law of privilege, the state law privileges asserted by the Defendants simply do not apply.

### B.    The District Court Properly Declined to Decide Issues Concerning Choice of Law On the Face of the Pleadings.

Even assuming state law governs the privileges Defendants claim, the district court properly determined it could not decide the issue on the face of the pleadings because the record was not sufficiently developed to determine which state's laws apply.  Defendants contend that this determination constitutes error. Both of Defendants' arguments on this issue are wrong.

First, Defendants argue that the district court erred by engaging in a choice of law analysis at all, because the litigation privilege would shield their conduct no matter which state's law applies.  The choice of laws, however, does matter. Under the law of New York, where Garlock is based and was injured, it is settled that attorneys can be sued for fraud committed in the context of litigation and that the state's litigation privilege, which applies only to claims of defamation, absolves them of liability.  *See, e.g.*, *N.Y. Cooling Towers, Inc. v. Goidel*, 805 N.Y.S.2d 779, 783 (N.Y. Gen. Term. 2005) (holding that fraud claim against opposing counsel in prior litigation was not immunized under litigation privilege); *N.Y.C. Transit Auth. v. Morris J. Eisen, P.C.*, 276 A.D.2d 78, 89 (N.Y. App. Div. 2000) (holding that law firm and individual attorneys were liable on fraud and N.Y. Judiciary Law §

8083003v5

24

487 claims for elaborate litigation-fraud scheme perpetrated against transit authority), *abrogated on other grounds by Melcher v. Greenberg Traurig, LLP*, 16 N.E.3d 1241 (N.Y. 2014).  Indeed, N.Y. Judiciary Law § 487 establishes a claim against attorneys for "deceit or collusion . . . with intent to deceive the court or any party."

The cases Defendants cite in their brief are not to the contrary.  While Defendants cite cases to show the New York litigation privilege covers both in-court and out-of-court statements, they fail to show that the privilege extends outside the context of defamation to cover claims for fraud.  Brief at 20.  Indeed, the cases cited above hold exactly the opposite.  *See N.Y. Cooling Towers, Inc.,* 805 N.Y.S.2d at 783.

Second, Defendants assert that the district court incorrectly determined that it could not decide issues concerning choice of laws on the face of the pleadings. Conducting a choice of laws analysis requires the court to apply North Carolina's *lex loci delicti* doctrine,[7] which looks to the laws of the place where the plaintiff's injury occurred.  *Boudreau v. Baugman*, 368 S.E.2d 849 (N.C. 1988).  This

---

[7]    A federal court applies the choice of law rules of the forum in which it sits. *In re Merritt Dredging Co., Inc.*, 839 F.2d 203, 205 (4th Cir. 1988) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  North Carolina applies the *lex loci delicti* doctrine, which looks to the place where the injury occurred, to determine which forum's laws to apply.  *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 698 S.E.2d 719, 722 (N.C. Ct. App. 2010).

analysis is necessarily fact intensive.  And it is especially so in a case such as this, where Defendants engaged in fraudulent conduct across numerous states in an effort to obtain inflated settlements from Plaintiffs GST and GLMG, which currently have their principal places of business in North Carolina and New York, respectively.  *See* Restatement (Second) of Conflict of Laws § 148 cmt. c. (1971) ("When the loss is pecuniary in its nature, the place of loss is far more difficult to locate than when the damage consists of physical injury to persons or to tangible things.").

Though the district court's determination that it could not make a reasoned choice of laws analysis without further factual development is entirely appropriate, Garlock submits that ultimately New York law should apply to its state claims.  As the jurisdiction where both Plaintiffs resided at all times relevant to the allegations of the Complaint, New York is the only state common to all of Garlock's injuries. New York is also the state from which Plaintiff GLMG coordinated all litigation activities for Plaintiff GST and dispersed funds to make settlement payments to Defendants.[8]

---

[8]     In cases such as here, where defendants engage in wrongful conduct spread across numerous states in an effort to inflict economic injuries on the plaintiff, courts often find the plaintiff's place of injury is the jurisdiction where it is based. *See, e.g., Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*, 640 F. Supp. 1411, 1433 (E.D.N.C. 1986) (finding that, in "multistate disparagement campaign," numerous factors militated in favor of applying North Carolina law to claims involving a party based in North Carolina, observing that "[t]his result is

8083003v5

26

In contrast, Defendants fail to identify any single state where they contend Garlock's injury occurred.  Instead, they assert in scattershot fashion that the laws of California, Texas, and Florida apply, without making any attempt to choose among them.  The district court correctly reasoned that Defendants' apparent confusion militated against a reasoned choice of law analysis at this stage in the litigation.  J.A. 203 (observing, with respect to Defendants' anti-SLAPP arguments, "[i]t appears from their arguments that Defendants themselves are not even sure which of these statutes is applicable").  This Court likewise should refrain from deciding choice of law issues at this stage, which would require it to do so before the district court and on a record that has not had any opportunity for factual development.

## III.  <u>NO COMMON LAW PRINCIPLE GRANTS DEFENDANTS IMMUNITY FROM CLAIMS UNDER RICO.</u>

The state law litigation immunities Defendants invoke necessarily have no application to Garlock's federal RICO claims.  To circumvent this hole in their

---

consistent with the state's goal of providing a remedy in North Carolina for persons injured by conduct occurring outside the state but causing injury here"); *see also Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 387 F. Supp. 2d 521, 532 (M.D.N.C. 2005) ("Madison argues that North Carolina law controls because the alleged misrepresentations and concealments took place in North Carolina. … This position, however, disregards the clear holdings within this circuit and of this court. … [I]t is clear that Colorado law governs Defendant's fraud and misrepresentation claims because Defendant suffered any injury as a result of alleged misrepresentations in Colorado, its principal place of business.").

argument, Defendants alternatively assert that "common law" immunities absolve them of liability under RICO, or that fraud committed in the course of litigation cannot support a RICO claim. Neither assertion withstands scrutiny.

Defendants concede the Supreme Court has not recognized an absolute immunity shielding attorneys from claims under RICO. Brief at 23. Lower federal courts as well have noted this absence and accordingly rejected attorneys' claims of immunity for RICO violations. *See*, *e.g.*, *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 364-65 (9th Cir. 2005) ("[Defendant] has not cited any federal case which holds that a party's litigation conduct in a prior case is entitled to absolute immunity and cannot form the basis of a subsequent federal civil RICO claim. In fact, the RICO statute, itself, provides that conduct relating to prior litigation may constitute racketeering activity.") (internal citation omitted); *Religious Tech. Ctr.*, 971 F.2d at 367 (finding no case "indicating . . . a privilege [such as a state litigation privilege] has been recognized as a matter of federal common law"); *Crowe v. Smith*, 848 F. Supp. 1258, 1263-64 (W.D. La. 1994) ("declin[ing] to form" a "broad shield from RICO for attorney advocacy" and noting that the court found "no such shield in the language of RICO or the case law").

Unable to cite a case recognizing a federal immunity that would allow them to avoid Garlock's RICO claims, Defendants instead point to the Supreme Court's

8083003v5

28

civil rights jurisprudence under 42 U.S.C. § 1983. *See Kalina v. Fletcher*, 522 U.S. 118, 123 (1997); *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983); *Malley v. Briggs*, 475 U.S. 335, 337 (1986); *Butz v. Economou*, 438 U.S. 478, 504 (1978); *Forrester v. White*, 484 U.S. 219, 220 (1988) (all considering § 1983 claims). These cases, however, do not recognize an immunity that Defendants can claim. *See, e.g., Imbler v. Pachtman*, 424 U.S. 409, 422-23 (1976) (observing that the "common-law immunity of a *prosecutor* is based upon the same considerations that underlie the common-law immunities of judges and grand jurors . . . ."); *Butz*, 438 U.S. at 511-12 (explaining that prosecutors enjoy immunity as "members of the Executive Branch," in part because of "the functional comparability" of their work to that of judges); *Forrester*, 484 U.S. at 223[9] (holding that qualified, not absolute, immunity extends to actions taken by state judges in their administrative capacities); *Kalina*, 522 U.S. at 123 (noting that the Court "ha[s] examined

---

[9] Defendants correctly quote *Forrester*, a § 1983 case, as stating that "this Court has not been quick to find that federal legislation was meant to diminish the traditional common-law protections extended to the judicial process." *Forrester*, 484 U.S. at 225. The cases *Forrester* cites to support that proposition, however—*Pierson v. Ray*, 386 U.S. 547 (1967); *Butz v. Economou*, 438 U.S. 478 (1978); *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Briscoe v. LaHue*, 460 U.S. 325 (1983)—are all § 1983 cases, and thus all involve claims against defendants acting under color of state law. *See* 42 U.S.C. § 1983. Thus, *Forrester* does not reflect a wholesale "reluctance to permit *federal statutes* to overwhelm the privilege," as Defendants suggest, Brief at 23 (emphasis added), because its reasoning is necessarily limited to § 1983.

common-law doctrine when identifying both the elements of the cause of action and the defenses available to *state actors*" (emphasis added).

Defendants' suggestion that the common law immunities provided governmental officials under § 1983 apply to their conduct—which implicates a different federal statute and involves the conduct of private attorneys, as opposed to public prosecutors—is prone to mislead.[10] This Circuit has warned that cases involving immunities under § 1983 cannot be analogized to other federal statutes. *See Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 228 (4th Cir. 2007) (rejecting law firm's arguments that common law privileges under § 1983 extend to other federal statutes, particularly those that establish "comprehensive" statutory

---

[10]    At common law, private attorneys were entitled to absolute immunity only against claims for defamation. *See Kalina*, 522 U.S. at 132-33 (Scalia, J., concurring) (internal citation omitted) (explaining that although there was no absolute prosecutorial immunity at common law, three relevant immunities were recognized: 1) "judicial" immunity which "extended only to individuals who were charged with resolving disputes between other parties or authoritatively adjudicating private rights"; 2) "quasi-judicial" immunity which applied "[w]hen public officials made discretionary policy decisions that did not involve actual adjudication"; and 3) "an absolute immunity for statements made in the course of a judicial proceeding and relevant to the matter being tried" which "protected both witnesses and attorneys," but "was, however, an immunity only against slander and libel actions"); *see also Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1371 (10th Cir. 1991) ("Our research suggests that only in a narrow class of cases involving defamation claims has the Supreme Court acknowledged a common law tradition of absolute immunity for private lawyers.").

schemes, such as the Fair Debt Collection Practices Act). Thus, finding no "common law precedent for absolute immunity" to protect claims of "allegedly fraudulent statements [made] in the course of discovery and at trial," Defendants "cannot avail [themselves] of the immunity afforded government lawyers responsible for vindicating the public interest." *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1373-74, 1370 (10th Cir. 1991), *cert. denied sub nom. Herzfeld & Rubin v. Robinson*, 502 U.S. 1091 (1992) (rejecting private law firm's claim of absolute immunity for alleged "fraud in its litigation conduct," including concealing information which "preclud[ed] the plaintiffs from using critical liability evidence against [defendant] and collecting damages").

Likewise, Defendants cannot rely on state law immunities to avoid federal RICO claims. *See Kimes v. Stone*, 84 F.3d 1121, 1126-27 (9th Cir. 1996) (noting that "'[a] construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced'") (quoting *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980) (citation omitted) (holding the immunities applicable to federal causes of action, such as that provided under § 1983, are governed by federal law, not state law)); *Johnson v. JP Morgan Chase Bank DBA Chase Manhattan*, 536 F.

8083003v5

31

Supp. 2d 1207, 1213 (E.D. Cal. 2008) (finding that "the federal claims [including a RICO claim] preempt the [California] litigation privilege").

Lacking immunity, Defendants distort the holdings of a handful of cases into a supposed blanket policy prohibiting RICO liability for all litigation-related activities. The case law, however, stands for no such proposition.[11] To the contrary, the decisions Defendants cite each involve cases in which the plaintiffs failed to plead the necessary elements to state a RICO claim. They do not establish a broad policy immunizing attorneys for RICO violations that occur in litigation.

For example, in *HMK Corp. v. Walsey*, this Court dismissed RICO claims arising out of a zoning dispute between developers, which had cycled in and out of litigation, because the plaintiffs alleged only isolated acts and thus failed to establish "a pattern of racketeering activity" under RICO. 828 F.2d 1071, 1072 (4th Cir. 1987).[12] The other cases Defendants cite similarly anticipate that RICO

---

[11] Notably, although cited in the section of Defendants' brief devoted to "traditional common-law immunities," the following cases do not reference litigation immunities: *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556 (6th Cir. 2013); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086 (11th Cir. 2004); *Deck v. Engineered Laminates*, 349 F.3d 1253 (10th Cir. 2003); *HMK Corp. v. Walsey*, 828 F.2d 1071 (4th Cir. 1987); *Curtis v. Bushman*, 758 F. Supp. 2d 153 (E.D.N.Y 2010).

[12] As this Court recognized in *HMK*, "the federal cause of action does converge, however, with state actions that comprise predicate acts on which RICO is based" and thus "some overlap and displacement of state law is inevitable." *Id.* at 1076.

claims can arise out of litigation conduct, provided they are properly pled.  *See*, *e.g.*, *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 558-59, 566 (6th Cir. 2013) *cert. denied*, 134 S. Ct. 2133 (2014) (holding that the denial of certain statutory benefits under a state workers compensation scheme did not constitute an injury to the plaintiffs' "business or property" under RICO); *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 168, 170-71 (E.D.N.Y. 2010), *aff'd sub nom. Curtis v. Law Offices of David M. Bushman, Esq.*, 443 F. App'x 582 (2d Cir. 2011) (finding that plaintiffs' general allegations that defendants mailed various pleadings in support of "frivolous" lawsuits, without more, failed to establish predicate acts of mail and wire fraud). Moreover, the courts in *Raney v. Allstate Ins. Co.* and *Deck v. Engineered Laminates* merely held that filing meritless lawsuits does not constitute extortion under the Hobbs Act.  *See* 370 F.3d 1086, 1087-88 (11th Cir. 2004) ("Raney's RICO claim depends upon his ability to show a violation of the Hobbs Act, which bars interference in interstate commerce by means of extortion."); 349 F.3d 1253, 1258 (10th Cir. 2003) ("holding that meritless litigation is not extortion under § 1951").  Accordingly, none of the cases Defendants cite stand for the proposition that attorneys are immune from claims for RICO violations committed in the course of litigation.

Perhaps the most obvious flaw in Defendants' argument is the number of cases recognizing that litigation conduct can, in fact, support a RICO claim. For example, when an attorney is a "principal planner and actor in the purported scheme" and where his "letter-writing and filing of lawsuits" are "part and parcel" of the scheme, the attorney may be held liable for his activities under RICO. *See Crowe v. Smith*, 848 F. Supp. 1258, 1264 (W.D. La. 1994). Likewise, in a recent case, the Southern District of New York upheld RICO claims against an attorney who fabricated evidence "to induce [Defendants] to settle [a prior] case and to do so at a higher figure than otherwise might have been available." *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 590 (S.D.N.Y. 2014); *see also Living Designs*, 431 F.3d at 357-58, 363 (finding allegations that litigant withheld evidence during discovery in an attempt to induce artificially low settlement were sufficient to support a RICO claim predicated on acts of mail and wire fraud involving service of discovery documents). Courts in this circuit have allowed such claims to proceed as well. *See CSX Transp., Inc. v. Gilkison*, No. 5:05CV202, 2012 WL 1598081, at *1 (N.D. W. Va. May 3, 2012) (denying defendant lawyers' motion to dismiss claim alleging a complex RICO scheme to "deprive [the plaintiff] of access to meaningful discovery").

In sum, Defendants fail to cite any authority for the position that they can avoid liability under RICO because their fraud occurred in the course of litigation.

Instead, as the district court held, Garlock's allegations are "more than adequate" to state claims for fraud and RICO violations against Defendants. The complex scheme that Garlock has detailed in its Complaint removes Defendants' actions from the realm of "routine" litigation activities and zealous advocacy. Having survived Defendants' motion to dismiss under Rule 12(b)(6), Garlock is entitled to proceed on those claims, which, following discovery and trial, will establish Defendants' liability.

## CONCLUSION

For the reasons stated in support of Garlock's Motion to Dismiss (Doc. 14), Defendants' appeal should be dismissed for lack of appellate jurisdiction. Alternatively, if the Court proceeds to the merits, it should affirm the district court's order denying Defendants' motion to dismiss the complaint for the reasons stated above.

This 4th day of January, 2016.

ROBINSON BRADSHAW & HINSON, P.A.

/s/ D. Blaine Sanders

D. Blaine Sanders
N.C. Bar No. 12541
bsanders@rbh.com
Robert E. Harrington
N.C. Bar No. 26967
rharrington@rbh.com

101 North Tryon Street, Suite 1900
Charlotte, North Carolina  28246
Telephone:   704.377.2536
Facsimile:    704.378.4000

*Counsel for Plaintiffs-Appellees Garlock Sealing Technologies, LLC and Garrison Litigation Management Group, Ltd.*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 15-2178          **Caption:** Garlock Sealing Technologies v. Simon Greenstone

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]  this brief contains _____8,371_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]  this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]  this brief has been prepared in a proportionally spaced typeface using
   Microsoft Word_____ [*identify word processing program*] in
   14-pont Times New Roman_____ [*identify font size and type style*]; **or**

   [ ]  this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) D. Blaine Sanders_____

Attorney for Plaintiffs-Appellees_____

Dated: January 4, 2016_____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of January, 2016, I caused this BRIEF OF APPELLEES to be filed electronically with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Sara Higgins
Ray Owens
Higgins & Owens, PLLC
5925 Carnegie Blvd., Suite 530
Charlotte, NC 28209
shiggins@higginsowens.com

Michael W. Magner
Mark A. Cunningham
Avery B. Pardee
Jones Walker LLP
201 Street Charles Ave., 40th Floor
New Orleans, LA 70170
mmagner@joneswalker.com

I further certify that on this 4th day of January, 2016, I filed the required number of copies of this BRIEF OF APPELLEES with the Clerk of Court by first class mail.

/s/ D. Blaine Sanders
D. Blaine Sanders